# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

**GREGORIO MONTANIO,**

        **Plaintiff,**

      **vs.**                              **Civ. No. 15-551 KK**

**CAROLYN W. COLVIN,**
**Acting Commissioner of Social Security,**

        **Defendant.**

## MEMORANDUM OPINION AND ORDER[1]

**THIS MATTER** is before the Court on the Social Security Administrative Record (Doc. 16), filed September 21, 2015, in support of Plaintiff Gregorio Montanio's ("Plaintiff") Complaint (Doc. 1) seeking review of the decision of Defendant Carolyn W. Colvin, Acting Commissioner of the Social Security Administration, ("Defendant" or "Commissioner") denying Plaintiff's claim for Title II disability insurance benefits and for Title XVI supplemental security income benefits. On December 7, 2015, Plaintiff filed his Motion to Reverse and Remand for Rehearing, With Supporting Memorandum ("Motion"). (Doc. 21.) The Commissioner filed a Response in opposition on March 7, 2016 (Doc. 25), and Plaintiff filed a Reply on March 19, 2016. (Doc. 26.) The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c). Having meticulously reviewed the entire record and the applicable law and being fully advised in the premises, the Court finds the Motion is well taken and is **GRANTED.**

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings, and to enter an order of judgment, in this case. (Docs. 3, 8, 9.)

# I.  Background and Procedural Record

Claimant Gregorio Montanio ("Mr. Montanio") alleges that he became disabled on July 1, 2011,[2] at the age of forty-nine, because of chronic obstructive pulmonary disease ("COPD"), lower back injury, neck injury, headaches, and high blood pressure.  (Tr. 31, 168.[3]) Mr. Montanio completed the 10th grade in 1976,[4] attended cosmetology school in 1990, and worked as an electrician apprentice and construction laborer.  (Tr. 169, 223.)

On February 26, 2013, Mr. Montanio protectively filed[5] an application for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 et seq.[6]  (Tr. 143-46, 163-74.)   Mr. Montanio's application was initially denied on August 8, 2013.  (Tr. 54, 55-66, 82-85.)  Mr. Montanio's application was denied again at reconsideration on January 17, 2014.   (Tr. 67-80, 81, 92-96.)   On February 21, 2014, Mr. Montanio requested a hearing before an Administrative Law Judge ("ALJ").   (Tr. 97-98.) The ALJ conducted a hearing on February 12, 2015.  (Tr. 27-53.)  Mr. Montanio appeared in person at the hearing with attorney Michelle Baca.[7]  (*Id.*, Tr. 27, 89.)  The ALJ took testimony

---

[2] Mr. Montanio originally alleged an onset date of January 1, 2009.  (Tr. 143-163.)  He amended his alleged onset date at the Administrative Hearing to July 1, 2011.  (Tr. 31.)

[3] Citations to "Tr." are to the Transcript of the Administrative Record (Doc. 16) that was lodged with the Court on September 21, 2015.

[4] Mr. Montanio represented to State agency examining medical consultant N. Phoenix Anderson, Ph.D., that he completed the 11th grade and obtained his GED in 1976.  (Tr. 390.)

[5] Protective Filing Status is achieved once an individual contacts the Social Security Administration with the positive stated intent of filing for Social Security Disability benefits.   The initial contact date is considered a claimant's application date, even if it is earlier than the date on which the Social Security Administration actually receives the completed and signed application.  *See* 20 C.F.R. §§ 404.614, 404.630, 416.325, 416.340, 416.345.

[6] On January 28, 2015, Mr. Montanio filed an application for Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. § 1381 et seq.  (Tr. 13, 31.)  The SSI application was not made part of the record.  At the Administrative Hearing, however, the ALJ agreed to consider Mr. Montanio's Title XVI application along with his Title II application.  (Tr. 31-32.)  The ALJ's determination explicitly addressed both applications.  (Tr. 13, 22.)

[7] Mr. Montanio is represented in this proceeding by Francesca MacDowell.  (Doc. 1.)

from Mr. Montanio (Tr. 33-47) and an impartial vocational expert ("VE"), Leslie White. (Tr. 48-51.)

On March 25, 2015, the ALJ issued an unfavorable decision. (Tr. 10-22.) In arriving at her decision, the ALJ determined that Mr. Montanio met the insured status requirements of the Act through December 31, 2013,[8] and that Mr. Montanio had not engaged in substantial gainful activity since his alleged disability onset date. (Tr. 15.) The ALJ found that Mr. Montanio suffered from severe impairments of COPD, degenerative disc disease, substance abuse and hypertension. (Tr. 16.) The ALJ also determined that Mr. Montanio suffered from non-severe impairments of chronic back pain, bilateral wrist pain, knee pain, and depression. (*Id.*) However, the ALJ found that these impairments, individually or in combination, do not meet or medically equal one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 17.)

Because she found that Mr. Montanio's impairments did not meet a Listing, the ALJ then went on to assess Mr. Montanio's residual functional capacity ("RFC"). The ALJ stated that

> [a]fter careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can never kneel, crouch or crawl. He should avoid moderate exposure to pulmonary irritants such as odors, fumes, or gases and should avoid extremes of heat, cold and humidity. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.

(Tr. 18.) Based on the RFC and the testimony of the VE, the ALJ concluded that Mr. Montanio was not capable of performing his past relevant work as an electrician apprentice, construction

---

[8] To receive benefits, Mr. Montanio must show he was disabled prior to his date of last insured. *See Potter v. Sec'y of Health & Human Servs.*, 905 F.2d 1346, 1347 (10th Cir. 1990).

laborer, or furniture mover.  (Tr. 20.)  At step five, the ALJ determined that considering Mr. Montanio's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that he could perform.  (Tr. 20-21.)

On June 8, 2015, the Appeals Council issued its decision denying Mr. Montanio's request for review and upholding the ALJ's final decision.  (Tr. 1-3.)  On June 29, 2015, Mr. Montanio timely filed a Complaint seeking judicial review of the Commissioner's final decision.  (Doc. 1.)

## II.  Standard of Review

Judicial review of the Commissioner's denial of disability benefits is limited to whether the final decision[9] is supported by substantial evidence and whether the Commissioner applied the correct legal standards to evaluate the evidence.  42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). In making these determinations, the Court must meticulously examine the entire record, but may neither reweigh the evidence nor substitute its judgment for that of the Commissioner.  *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).  In other words, the Court does not reexamine the issues *de novo*.  *Sisco v. U.S. Dep't. of Health & Human Servs.*, 10 F.3d 739, 741 (10th Cir. 1993).  The Court will not disturb the Commissioner's final decision if it correctly applies legal standards and is based on substantial evidence in the record.

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Langley*, 373 F.3d at 1118.  Substantial evidence is "more than a scintilla, but less than a preponderance."  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).  A decision "is not based on substantial evidence if it is overwhelmed by other evidence

---

[9] A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which is generally the ALJ's decision.  20 C.F.R. §§ 404.981, 416.1481.  This case fits the general framework, and therefore, the Court reviews the ALJ's decision as the Commissioner's final decision.

in the record[,]" *Langley,* 373 F.3d at 1118, or "constitutes mere conclusion." *Musgrave v. Sullivan,* 966 F.2d 1371, 1374 (10th Cir. 1992). The Court's examination of the record as a whole must include "anything that may undercut or detract from the [Commissioner's] findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax*, 489 F.3d at 1084 (quoting *Zoltanski v. Fed. Aviation Admin.*, 372 F.3d 1195, 1200 (10th Cir. 2004)). Thus, the Court "may not displace the agency's choice between two fairly conflicting views," even if the Court would have "made a different choice had the matter been before it *de novo*." *Oldham v. Astrue*, 509 F.3d 1254, 1257-58 (10th Cir. 2007).

"The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted). Thus, even if a reviewing court agrees with the Commissioner's ultimate decision to deny benefits, it cannot affirm that decision if the reasons for finding a claimant not disabled were arrived at using incorrect legal standards, or are not articulated with sufficient particularity. *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). "[T]he record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence." *Id.* at 1009-10. Rather, the ALJ need only discuss the evidence supporting his decision, along with any "uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Id.*; *Mays v. Colvin*, 739 F.3d 569, 576 (10th Cir. 2014).

### III.  Applicable Law and Sequential Evaluation Process

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment."  42 U.S.C. § 423(d)(1)(A).  A claimant is disabled under the Act if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national economy."  42 U.S.C. § 423(d)(2)(A).  To qualify for disability insurance benefits, a claimant must establish a severe physical or mental impairment expected to result in death or to last for a continuous period of twelve months, which prevents the claimant from engaging in substantial gainful activity.  42 U.S.C. §423(d)(1)(A); *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993).

When considering a disability application, the Commissioner uses a five-step sequential evaluation process.  20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).  At the first four steps of the evaluation process, the claimant must show that: (1) he is not engaged in "substantial gainful activity"; *and* (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) his impairment(s) meet or equal one of the Listings[10] of presumptively disabling impairments; *or* (4) he is unable to perform his "past relevant work."  20 C.F.R. §§ 404.1520(a)(4)(i-iv), 416.920(a)(4)(i-iv); *Grogan* 399 F.3d at 1261.  If the claimant can show that his impairment meets or equals a Listing at step three, the claimant is presumed disabled and the analysis stops.  If at step three, the claimant's impairment is not equivalent to a listed impairment, before moving on to step four of the analysis, the ALJ must consider all of the

---

[10] 20 C.F.R. pt. 404, subpt. P. app. 1.

relevant medical and other evidence, including all of the claimant's medically determinable impairments whether "severe" or not, and determine what is the "most [the claimant] can still do" in a work setting despite his physical and mental limitations.  20 C.F.R. § 404.1545(a)(1)-(3).  This is called the claimant's residual functional capacity ("RFC").  20 C.F.R. §§ 404.1545(a)(1) & (a)(3).  The claimant's RFC is used at step four to determine if he can perform the physical and mental demands of his past relevant work.  20 C.F.R. § 404.1520(a)(4), 404.1520(e).  If the claimant establishes that he is incapable of meeting those demands, the burden of proof then shifts to the Commissioner, at step five of the sequential evaluation process, to show that the claimant is able to perform other work in the national economy, considering his residual functional capacity ("RFC"), age, education, and work experience.  *Id.*, *Grogan*, 399 F.3d at 1261.

Although the claimant bears the burden of proving disability in a Social Security case, because such proceedings are nonadversarial, "[t]he ALJ has a basic obligation in every social security case to ensure that an adequate record is developed during the disability hearing consistent with the issues raised."  *Henrie v. U.S. Dep't of Health & Human Servs.*, 13 F.3d 359, 360-61 (10th Cir. 1993); *Madrid v. Barnhart*, 447 F.3d 788, 790 (10th Cir. 2006).  "This is true despite the presence of counsel."  *Henrie*, 13 F.3d at 361.  "The duty is one of inquiry and factual development," *id.*, "to fully and fairly develop the record as to material issues."  *Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir. 1997).  This may include, for example, an obligation to obtain pertinent medical records or to order a consultative examination.  *Madrid*, 447 F.3d at 791-92.  The duty is triggered by "some objective evidence in the record suggesting the existence of a condition which could have a material impact on the disability decision requiring further investigation."  *Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir. 1997).

## IV.  Analysis

Mr. Montanio asserts three arguments in support of reversing and remanding his case, as follows: (1) the ALJ's RFC is incomplete, conclusory, and unsupported by substantial evidence; (2) the ALJ improperly granted controlling weight to State agency nonexamining medical consultants; and (3) the ALJ used improper facts in evaluating Mr. Montanio's credibility.  For the reasons discussed below, Mr. Montanio's motion will be granted.

### A.    Mr. Montanio's Medical History

#### 1.    Queenscare Family Clinic

The record supports that Mr. Montanio sought medical care for asthma and back pain at Queenscare Family Clinic in Los Angeles, California, beginning February 9, 2009.  (Tr. 370-72.) Mr. Montanio presented as a new patient on that date and was evaluated by Kim Huynh, M.D. (*Id.*)  Mr. Montanio reported chronic back pain for years, numbness in both thighs, and a burning sensation in his right thigh after standing for a prolonged time.  (*Id.*)  Dr. Huynh assessed Mr. Montanio with moderate persistent asthma, obesity, backache, meralgia paresthetica (thigh pain), and nicotine dependence.  (Tr. 371.)  Dr. Huynh discussed weight loss, exercise, diet, and tobacco cessation with Mr. Montanio.  (Tr. 372.)  Dr. Huynh ordered lab work and prescribed Qvar and Albuterol for Mr. Montanio's asthma, Tramadol and Gabapentin for his back pain, Nortriptyline for his thigh pain, and Wellbutrin to assist with smoking cessation.  (*Id.*) Mr. Montanio returned to Queenscare Family Clinic six more times over the next four months and saw either Dr. Huynh or Nurse Practitioner Christen Sanchez.  (Tr. 352-54, 355-57, 358-60, 361-63, 364-66, 367-69.)   Over the   course of those four months, lab work revealed Mr. Montanio had high cholesterol, and radiologic studies revealed moderate degenerative changes in his lumbosacral spine with some narrowing of the disc space between L3 and L4.

(Tr. 368, 373.)  Nurse Practitioner Sanchez also diagnosed Mr. Montanio with hypertension.  (Tr. 359.)  Queenscare providers subsequently prescribed Lipitor for Mr. Montanio's high cholesterol and Hydrochlorothiazide ("HCTZ") for his hypertension.  (Tr. 359.)  The Queenscare records further noted that Mr. Montanio briefly stopped smoking for 16 days with the help of Wellbutrin.  (Tr. 352, 355.)  Mr. Montanio's last visit to the Queenscare Family Clinic was on June 16, 2009.  (Tr. 352-54.)

### 2.    Albuquerque Health Care for the Homeless

On November 3, 2009, Mr. Montanio sought medical care at Albuquerque Health Care for the Homeless ("AHCH").  (Tr. 271-72.)  He complained of back pain and burning/numbness to both legs, and requested Tramadol.  (*Id.*)  Mr. Montanio also requested Wellbutrin to help with smoking cessation.  (*Id.*)  William Zolin, M.D., assessed chronic low back pain, cigarette abuse with erythrocytosis, history of plasma donation, and hypertension.  (*Id.*)  Dr. Zolin wrote a prescription for Tramadol for Mr. Montanio to take to an outside pharmacy, and ordered lab work before prescribing Wellbutrin.  (*Id.*)  Over the next nineteen months, Mr. Montanio presented ten times to various healthcare providers at AHCH with persistent complaints of chronic lower back pain, asthma and hypertension.  (Tr. 240-41, 242-43, 244-45, 246-47, 254-55, 256-58, 259-60, 264, 342-43, 344-45.)  AHCH providers prescribed Advair and Albuterol and provided nebulizer treatments for Mr. Montanio's asthma, and prescribed Atenolol for his hypertension.  (*Id.*)  Mr. Montanio sought Tramadol for his back pain from an outside pharmacy and from First Nations Community Healthsource because AHCH did not maintain patients on Tramadol.  (Tr. 256, 332.)  Mr. Montanio's last visit at AHCH was on May 24, 2011.  (Tr. 340-41.)

### 3.    First Nations Community Healthsource

On July 13, 2011, Mr. Montanio established care at First Nations Community Healthsource ("First Nations") in Albuquerque, New Mexico.  (Tr. 332.)   Mr. Montanio presented for vitals and reported he was out of his blood pressure medication.  (*Id.*)  He was evaluated by Alexandria Kazaras, M.D.  (*Id.*)  The record supports that Mr. Montanio routinely sought medical care at First Nations from that initial visit until February 5, 2015, and presented at least thirty times for lab work, medication refills, vitals checks, chronic pain management, and breathing-related treatments.  (Tr. 304-06, 307-08, 309-10, 311-13, 314-16, 317-18, 319-20, 321-22, 325, 326, 327, 328, 329, 330, 331, 383-84, 385-86,  462-63, 464-65, 466-67, 510-12, 513-16, 517-19, 539-41, 542-44, 545-47, 548-49, 551-53, 554-56, 557-59.)   Healthcare providers[11] assessed Mr. Montanio with, *inter alia*, hypertension, asthma/COPD, hypercholesterolemia, chronic back pain, and tobacco dependence.  (*Id.*)   Healthcare providers regularly prescribed Tramadol, Ibuprofen, Atenolol, Lipitor, Symbicort, Advair, and Albuterol to treat Mr. Montanio's ongoing medical conditions.  (*Id.*)  Mr. Montanio frequently reported running out of his medications, which he often explained was due to his inability to afford them. (Tr. 304-06, 326, 330, 385-86, 414, 466-67, 489, 496, 510-12, 513-16, 517-19.)

### 4.    UNMH

On May 18, 2013, Mr. Montanio presented to First Nations with complaints of increased shortness of breath, and after three albuterol nebulizer treatments and a steroid injection over the course of four hours, his oxygen saturation remained below normal.  (Tr. 385-86.)  Dr. Kazaras instructed Mr. Montanio to go to the University of New Mexico Hospital ("UNMH") emergency room for further evaluation of hypoxia.  (*Id.*)  On May 19, 2013, Mr. Montanio presented to

---

[11] Mr. Montanio's primary provider was Dr. Kazaras; however, he was seen twice by Genevieve Bourgeois, NP (Tr. 317-18, 319-20), and once by Jessica Wyaco Tsabetsaye (Tr. 462-63).

UNMH with complaints of shortness of breath for four weeks.  (Tr. 414.)  Mr. Montanio reported

he used Albuterol 4-5 times a day, but had run out about a month ago.  (*Id.*)  He also reported

using Symbicort.  (*Id*.)  Mr. Montanio stated he smoked a pack of cigarettes every day.  (*Id.*)

Bilateral generalized expiratory wheezes were noted on physical exam.  (Tr. 415.)  A chest x-ray

returned normal.  (Tr. 416.)  Mr. Montanio was admitted and treated over the next two days until

his oxygen saturation at room air was improved.  (Tr. 418.)  Mr. Montanio's discharge diagnosis

was "probable chronic obstructive pulmonary disease with an acute exacerbation."  (Tr. 417-18.)

He was discharged with a nebulizer machine and supplies.  (Tr. 418.)  On May 31, 2013,

Mr. Montanio followed up with pulmonary function tests at the UNMH Pulmonary Diagnostic

Lab.  (Tr. 399-400.)  Spirometry showed a moderately severe pulmonary obstruction.  (Tr. 400.)

Mr. Montanio was diagnosed with asthma.  (Tr. 399.)

On June 25, 2013, Mr. Montanio returned to UNMH Pulmonary Diagnostic Lab for

additional pulmonary function tests.  (Tr. 396.)  Spirometry showed a severe obstruction, and

notes indicated that his pulmonary lab had significantly worsened since May 2013.  (*Id*.)

On March 30, 2014, Mr. Montanio presented to the UNMH complaining of increased

shortness of breath with minimal activity for the past three weeks.  (Tr. 483.)  Mr. Montanio

stated he had been smoking marijuana for the past several months with increased intake lately,

and that he also smoked a pack of cigarettes a day.  (*Id*.)  The examiner noted that Mr. Montanio

reported taking his COPD medications regularly, but that he had run out three weeks earlier.

(*Id*.)  Physical exam revealed very poor lung movement with scattered wheezes.  (Tr. 484.)

Mr. Montanio was admitted and treated for COPD exacerbation.  (Tr. 488.)  Mr. Montanio was

discharged two days later in stable condition "without difficulty walking and improved capacity

to physically exert himself without becoming short of breath."  (Tr. 487.)  Healthcare providers

strongly encouraged Mr. Montanio to stop smoking cigarettes and marijuana, and provided him with a patch and smoking cessation information.  (Tr. 488.)  Attending Physician Seth Scott noted that Mr. Montanio "is self-employed and gets into financial binds where he is unable to afford his medications.  He also is a chronic smoker[.]"  (Tr. 489.)  Dr. Scott further noted that if Mr. Montanio continued to smoke and not take his inhalers, he would likely return with another COPD exacerbation.  (*Id*.)

### 5.   **Dr. Karl Moedl**

On May 26, 2011, Mr. Montanio presented to State agency examining medical consultant Karl Moedl, M.D., for a physical evaluation.  (Tr. 297-300.)  Mr. Montanio reported he was diagnosed with COPD three years earlier and had started smoking at 16.   (Tr. 297.)  Mr. Montanio represented he was trying to quit smoking.  (*Id*.)  Mr. Montanio stated that he could walk about one and half blocks before experiencing shortness of breath and leg pain from his back.  (*Id*.)  He stated that could stand 20 minutes before experiencing burning pain down his legs all the way to his feet.  (*Id*.)  Mr. Montanio said he could sit for about three hours before having to move.  (*Id*.) On physical exam, Dr. Moedl noted that Mr. Montanio was unable to walk on his toes or heels because of back pain, and that straight leg raising, thoracic-lumbar spine forward flexion, and lateroflexion caused pain in his lumbar spine.  (Tr. 298-99.)  Dr. Moedl also noted that Mr. Montanio had bilateral rhonchi and wheezing.  (Tr. 299.)  Dr. Moedl's impression was (1) acute bronchitis with asthma; (2) COPD, still smoking; (3) degenerative lumbar disk disease with pain and limited motion; (4) hypertension; and (5) obesity.  (Tr. 299-300.)

### 6.   **Mark A. Werner, M.D.**

On August 7, 2013, State agency nonexamning medical consultant Mark A. Werner, M.D., reviewed Mr. Montanio's medical records.   (Tr. 62-65.)   Dr. Werner assessed that

Mr. Montanio was capable of light work.  (Tr. 62-63.)  Dr. Werner also assessed environmental limitations that Mr. Montanio should avoid concentrated exposure to extreme cold, extreme heat, wetness, humidity, and "fumes, odors, dusts, gases, poor ventilation, etc.," due to Mr. Montanio's asthma/COPD.  (Tr. 63.)  Dr. Werner explained that Mr. Montanio's was limited by COPD and mild lower degenerative changes, but that he should be capable of RFC with medication compliance.  (Tr. 65.)

### 7.    Tom Dees, M.D.

On January 13, 2014, State agency nonexamining medical consultant Tom Dees, M.D., reviewed Mr. Montanio's medical records at reconsideration.  (Tr. 75-78.)  Dr. Dees repeated verbatim Dr. Werner's summary of Mr. Montanio's medical record review.  (*Id*.)  Dr. Dees then concluded that the "additional evidence" did not warrant a change in Dr. Werner's RFC.[12] (Tr. 78.)

### B.    RFC Assessment

RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain or shortness of breath, may cause physical or mental limitations or restrictions that may affect his capacity to do work-related physical and medical activities.    20 C.F.R. §§ 404.1529(d)(4), 416.929(d)(4), 404.1545(a)(3), 416.945(a)(3), and SSR 96-8p, 1996 WL 374184, at *2.  Exertional capacity addresses an individual's limitations and restrictions of physical strength and defines the individual's abilities to perform each of seven strength demands: sitting, standing, walking, lifting, carrying, pushing, and pulling.  SSR 96-8p, 1996 WL 374184, at *5.  Nonexertional capacity addresses an individual's limitations and restrictions that do not depend on an individual's physical strength; *i.e.,* all physical limitations and restrictions that are not reflected

---

[12] Dr. Dees does not cite to any additional evidence.

in the seven strength demands, as well as mental limitations and restrictions.  *Id.* at *6.  Some symptoms, such as pain, fatigue, or shortness of breath, *inter alia*, are not intrinsically exertional or nonexertional and may cause both exertional and nonexertional limitations.  *Id.*; *see also* SSR 95-5p, 1995 WL 670415, at *1 (considering allegations of pain and other symptoms in RFC).

In determining a claimant's RFC, the ALJ should first assess the nature and extent of the claimant's physical and mental limitations.  20 C.F.R. §§ 404.1545(b) and (c), 416.945(b) and (c).  The ALJ is required to consider all of the claimant's impairments, including impairments that are not severe.  *See* 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2);  *see also Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010).  "[T]he ALJ must make specific findings," *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996), that are "supported by substantial evidence." *Haddock v. Apfel*, 196 F.3d 1084, 1088 (10th Cir. 1999).  The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts and nonmedical evidence.  SSR 96-8p, 1996 WL 374184, at *7.  "Symptoms, such as pain, fatigue, shortness of breath, weakness, or nervousness, are the individual's own description of the effects of a physical or mental impairment(s)."  SSR 95-5p, 1995 WL 670415, at *1.  An ALJ must give careful consideration to any available information about symptoms because they sometimes suggest a greater severity of impairment than can be shown by objective medical evidence.  *Id.*  Further, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis, and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the record.  SSR 96-8p, 1996 WL 374184, at *7.  The adjudicator must also explain how any material inconsistencies or ambiguities in the record evidence were considered and resolved.  *Id.*  Finally, the RFC assessment must always consider and address

medical source opinions.  *Id.*  If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why she rejected the opinion.  *Id.*

Here, at step two, the ALJ found that Mr. Montanio had severe impairments of COPD, degenerative disc disease, substance abuse and hypertension.  (Tr. 16.)  She also found he had nonsevere impairments of chronic back pain, bilateral wrist pain, knee pain, and depression.  (*Id.*)  In determining Mr. Montanio's RFC, the ALJ explained that Mr. Montanio's medical records demonstrated that, except for occasional flare-ups, his COPD condition was stable.  (Tr. 19.)  She noted Dr. Moedl's consultative exam and diagnoses of "acute bronchitis with asthma, COPD, still smoking, degenerative lumbar disc disease with pain and limited motion, hypertension and obesity," but concluded that Dr. Moedl "did not indicate any specific limitations regarding sitting, standing, walking or lifting and carrying."  (*Id.*)  The ALJ commented that Mr. Montanio's more recent medical records – July 5, 2014 through February 5, 2015 – demonstrated routine care and that x-ray studies were negative for bilateral wrist and knee pain.  (*Id.*)  The ALJ concluded as to those records that other than continued medication management and the recommendation to stop smoking, no additional treatment or diagnostic evaluations were ordered, and that "the treating physician has not placed any restrictions on the claimant regarding sitting, standing, walking or lifting and carrying."  (*Id.*)  The ALJ stated that "no treating or examining physician has offered the opinion that the claimant is disabled."  (*Id.*)  Finally, the ALJ indicated that the "State agency medical and psychological consultants reviewed the medical evidence and opined that the claimant had no 'severe' mental impairment and was physically able to perform light work[.]"  (*Id.*)  The ALJ found Mr. Montanio's statements regarding the intensity, persistence and limiting effects of his symptoms not entirely credible primarily due to his history of noncompliance with prescribed medical treatment.

15

(Tr. 18-19.)   Ultimately, the ALJ granted significant weight to the State agency medical consultants and determined Mr. Montanio was capable of light work; *i.e.,* occasionally lifting and/or carrying 20 pounds; frequently lifting and/or carrying 10 pounds; standing and/or walking up to six hours in an eight-hour day; sitting up to six hours in an eight-hour day; never kneeling, crouching or crawling; and avoiding moderate exposure to pulmonary irritants.  (Tr. 18, 19-20.)

Mr. Montanio argues that the ALJ's RFC is contrary to the evidence and the law because the ALJ (1) failed to apply the correct legal standard; (2) failed to address Mr. Montanio's ability to perform sustained work activity; (3) failed to include limitations from Mr. Montanio's back pain; (4) failed to include adequate limitations for Mr. Montanio's COPD; and (5) failed to include a function-by-function assessment.  (Doc. 21 at 16-23.)  The Commissioner contends that (1) substantial evidence supports that ALJ's RFC; (2) that the ALJ properly found that Mr. Montanio's subjective complaints regarding his inability to work on a "regular and continuous basis" were incredible; (3) that the ALJ accounted for Mr. Montanio's back impairment by limiting him to light work with no kneeling, crouching, or crawling; (4) that the ALJ's failure to impose greater limitations due to Mr. Montanio's COPD was harmless; and (5) that it was not necessary for the ALJ to do a function-by-function assessment.  (Doc. 25 at 12-17.)  For the reasons discussed below, the Court finds that ALJ failed to apply correct legal standards in determining Mr. Montanio's RFC, and that it is not supported by substantial evidence.

### 1.   <u>Chronic Back Pain</u>

Mr. Montanio argues that the ALJ's RFC failed to properly consider his functional limitations due to his chronic back pain.  Specifically, he argues that the ALJ (1) erred by requiring objective medical evidence to support the functional limitations of Mr. Montanio's

chronic back pain; (2) erred in finding there was no evidence that Mr. Montanio's chronic back pain had lasted or could be expected to last for the requisite twelve months; (3) erred in finding that Mr. Montanio's chronic back pain could be managed with medication compliance; and (4) erred in finding that Mr. Montanio could sustain work on a regular and consistent basis given his chronic back pain.  (Doc. 21 at 17-18, 20-22.)  The Commissioner contends that the ALJ properly accounted for Mr. Montanio's "back impairment" by limiting him to light duty work, and limiting him to no kneeling, crouching, or crawling.  (Doc. 25 at 16.)  The Court is not persuaded.

### a.      Step Two Findings

The ALJ failed to properly consider Mr. Montanio's chronic back pain in determining Mr. Montanio's RFC.  *See* 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2);  *see also Wilson*, 602 F.3d at 1140.  In determining a claimant's RFC, the ALJ must assess the nature and extent of all claimant's physical and mental limitations.  20 C.F.R. §§ 404.1545(b) and (c), 416.945(b) and (c).  Here, at *step two* of the sequential evaluation process, the ALJ found Mr. Montanio's chronic back pain, *inter alia*,[13] to be nonsevere.  (Tr. 16.)  In so doing, the ALJ concluded that

> [w]hile there is mention in the medical records of treatment and medications for these problems, there is no objective medical evidence to support that these conditions have imposed significant functional restrictions on the claimant's overall functioning.  Further, there is no evidence that any of these conditions have lasted or can be expected to last for a continuous durational period of not less than 12 months.  These conditions are being managed medically and should be amenable to proper control by adherence to recommended medical management and medication compliance.  No more aggressive treatment or diagnostic evaluations have been recommended or anticipated for these conditions.  Accordingly, the undersigned Administrative Law Judge finds that these impairments are "not severe" as defined in the Social Security Regulations.

---

[13] The ALJ determined Mr. Montanio had nonsevere impairments of chronic back pain, bilateral wrist pain, knee pain, and depression.  (Tr. 16.)

(Tr. 16.)   The ALJ made no other findings regarding Mr. Montanio's chronic back pain elsewhere in her determination.[14]   The ALJ is required to consider all of the claimant's impairments, including impairments that are not severe, in determining a claimant's RFC.  *See* 20 C.F.R. §§ 404.1545(a)(2), (b) and (c),  416.945(a)(2), (b) and (c);  *see also Wilson*, 602 F.3d at 1140.  The ALJ failed to do so here.  This is reversible error.

### b.      Analysis for Evidence of Pain

Even if the Court assumed *arguendo* that the ALJ's *step two* findings regarding Mr. Montanio's chronic back pain were part of her RFC analysis, the ALJ failed to apply the correct legal standards in analyzing Mr. Montanio's pain, and her findings are not supported by substantial evidence.  The Tenth Circuit has explained the framework for the proper analysis of a claimant's evidence of pain.  "A claimant's subjective allegation of pain is not sufficient in itself to establish disability."  *Thompson*, 987 F.2d at 1488 (citing *Gatson v. Bowen*, 838 F.2d 442, 447 (10th Cir. 1988)).  Instead, "[b]efore an ALJ need consider any subjective evidence of pain, the claimant must first prove by objective medical evidence the existence of a pain-producing impairment that could reasonably be expected to produce the alleged disabling pain."  *Id.* (citing *Luna v. Bowen*, 834 F.2d 161, 163 (10th Cir. 1987)).  If a claimant does so, then the ALJ must consider whether there is a "loose nexus" between the proven impairment and the subjective complaints of pain.  *Id.*  Finally, if there is a loose nexus, the ALJ considers all of the evidence, both objective and subjective, to determine whether the pain was disabling.  *Id.*  Even if pain is not disabling, it is still a nonexertional impairment to be taken into consideration, unless there is

---

[14] At step two, the ALJ found Mr. Montanio's degenerative disc disease to be severe, while finding his chronic back pain to be nonsevere.  (Tr. 16.)  In her Response, the Commissioner conflates these two impairments, refers to them jointly as Mr. Montanio's "back impairment," and argues the ALJ properly considered Mr. Montanio's "back impairment" by limiting him to light work with no kneeling, crouching, or crawling.  (Doc. 25 at 16.)  None of this is apparent from the ALJ's decision, and the Court will not adopt the Commissioner's post-hoc rationalization for the ALJ's lack of findings that are not apparent from the ALJ's decision itself.  *Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007) (finding the court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision).

substantial evidence for the ALJ to find that the claimant's pain is insignificant." *Thompson*, 987 F.2d at 1491.

### (1)   Objective Evidence and Loose Nexus

The ALJ applied an incorrect legal standard in analyzing Mr. Montanio's pain. The first step in the three-step analysis of subjective pain is to determine whether objective medical evidence demonstrates the existence of a pain-producing impairment. Here, the ALJ stated that there was no objective medical evidence to support that Mr. Montanio's chronic back pain imposed significant functional restrictions. (Tr. 16.) This is error. "[T]he absence of an objective medical basis for the degree of severity of pain may affect the *weight* to be given to the claimant's subjective allegations of pain, but a lack of objective corroboration of the pain's severity cannot justify disregarding those allegations." *Thompson*, 987 F.2d at 1489 (emphasis added) (quoting *Luna*, 834 F.2d at 165). In this case, radiologic studies performed in response to Mr. Montanio's complaints of chronic back pain revealed moderate degenerative disc disease. (Tr. 373.) Further, multiple healthcare providers noted evidence of back pain with limited motion on physical exam. (Tr. 242-43, 297-300, 342-43.) Thus, Mr. Montanio proved by objective medical evidence the existence of a pain-producing impairment as he was required to do. *Thompson*, 987 F.2d at 1488. As such, the ALJ was required to determine whether there is a "loose nexus" between Mr. Montanio's proven impairment and his subjective complaints, and then decide whether she believed him. *Id.* at 1489. In determining the credibility of pain testimony, the ALJ should consider such factors as

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Id.*

### (2)    Credibility Findings

Here, as previously stated, the ALJ's only discussion regarding Mr. Montanio's chronic back pain was at *step two*.[15]   (Tr. 16.)  In that discussion, the ALJ found (1) that Mr. Montanio's medical records mentioned treatment and medication for chronic back pain; (2) that there was no evidence that Mr. Montanio's chronic back had lasted or could be expected to last for a continuous durational period of not less than 12 months, and (3) that his back pain "should be amenable to proper control by adherence to recommended medical management and medication compliance. (Tr. 16.)   To the extent these findings could be construed as addressing Mr. Montanio's credibility as to his back pain, there are multiple problems.  This first finding is insufficient and not supported by substantial evidence, the second finding is not supported by substantial evidence, and the third finding is not based on correct legal standards.

The ALJ's first credibility finding is insufficient because she failed to consider the credibility factors outlined in *Thompson* in assessing Mr. Montanio's subjective complaints regarding his chronic back pain.  *Thompson*, 987 F.2d at 1489.  Here, Mr. Montanio reported to Dr. Moedl that he could only walk about one and a half blocks or stand about 20 minutes before he experienced leg pain from his back.  (Tr. 297.)  He testified that he has to frequently change positions due to his back pain.  (Tr. 40.)  He further testified that his back pain affects his ability to do grocery shopping, and to do household chores like taking out the trash, sweeping or

---

[15]  As part of the ALJ's RFC analysis, she recited boilerplate language that Mr. Montanio's medically determinable impairments might be expected to cause some of the alleged symptoms, but that his statements concerning the intensity, persistence and limiting effects of his symptoms were not entirely credible.  (Tr. 18.)  The ALJ then explained that Mr. Montanio was not credible because he had a "history of non-compliance."  (Tr. 19.)  The ALJ's discussion   described Mr. Montanio's "history of non-compliance" as his failure to stop smoking despite recommendations to do so, that he continued to smoke marijuana, and that he did not take his inhalers as prescribed. (*Id.*)

vacuuming.  (Tr. 37-38, 42.)   The ALJ nonetheless stated only that Mr. Montanio's medical records mentioned treatment and medication for his chronic back pain, but she failed to identify the levels of medication, or its effectiveness.   (Tr. 16.)   The ALJ also failed to discuss Mr. Montanio's attempts to obtain relief, or the frequency of his medical contacts, which the record supports were consistent and numerous.  *See* Section IV.A.1, 2, 3, and 4, *supra*.  In her RFC analysis, the ALJ briefly discussed Mr. Montanio's daily activities and stated that he was able to "cook, wash dishes, sweep, mop, and do laundry.  He walks across the street and up and down his block every day."  (Tr. 18.)   However, these findings, at least in part, incorrectly represent the record where Mr. Montanio testified that he does *not* sweep or vacuum, and that he will walk across the street or maybe down the block, but *not* that he "walks across the street and up and down his block every day."  (Tr. 38-39.)  Additionally, an ALJ "may not rely on minimal daily activities as substantial evidence that a claimant does not suffer disabling pain." *Thompson*, 987 F.2d at 1490.  The ALJ's credibility findings, therefore, are insufficient and not supported by substantial evidence.

Mr. Montanio's back pain lasted for longer than twelve months.  The medical record evidence supports that Mr. Montanio first complained about back pain on February 9, 2009, and then consistently complained of and/or was treated for chronic back pain through February 5, 2015.[16]  (Tr. 240-41, 242-43, 247, 254-55, 256-58, 259-60, 261-63, 271-72, 304-06, 307-08, 309-10, 311-13, 314-16, 317-18, 321-33, 326, 328, 329, 332, 342-43, 364-66, 370-72, 383-84, 462-63, 464-65, 466-67, 510-12, 513-16, 517-19, 539-41, 542-44, 545-47, 548-49, 551-53, 554-56, 557-59.)  Ironically, it is a rare medical record within the Administrative Record that does *not* contain evidence of Mr. Montanio's chronic back pain.  Thus, the ALJ is simply wrong that

---

[16] The medical record evidence in the Administrative Record ends on February 5, 2015.  (Tr. 539-41.)

Mr. Montanio's chronic back pain failed to meet the requisite twelve-month durational period. As such, any reliance on this finding to conclude that Mr. Montanio's complaints of back pain were incredible is misplaced and not supported by substantial evidence.

Finally, the ALJ improperly concluded, without more, that Mr. Montanio's chronic back pain "should be amenable to proper control by adherence to recommended medical management and medication compliance." This is error. An ALJ's findings on credibility "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted). Further, to the extent the ALJ relied on Mr. Montanio's lack of medication compliance to find him incredible, she failed to apply the four-factor standard from *Frey v. Bowen*, 816 F.2d 508 (10th Cir. 1987), to support her noncredibility determination as she was required to do.[17] In so doing, the ALJ must consider "(1) whether the treatment at issue would restore claimant's ability to work; (2) whether the treatment was prescribed; (3) whether the treatment was refused; and if so, (4) whether the refusal was without justifiable excuse." *Thompson*, 987 F.2d at 1490 (quoting *Frey*, 816 F.2d at 517. Here, the ALJ only acknowledged that treatment and medication had been prescribed for Mr. Montanio's back pain. (Tr. 16.) As to the other factors, however, the ALJ points to no evidence that medication compliance for Mr. Montanio's back pain would restore his ability to perform sustained work activities on a regular and continuous basis,

---

[17] The Commissioner relies on *Qualls v. Apfel*, 206 F.3d 1368 (10th Cir. 2000), to argue that the four-factor standard from *Frey v. Bowen* does not apply when a claimant's noncompliance with a physician's recommendation is used only as a credibility consideration. (Doc. 25 at 23.) However, in *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993), the Tenth Circuit specifically held that the four-factor *Frey* standard should be applied before an ALJ may rely on a claimant's failure to pursue prescribed treatment or take prescribed medication to support a determination of noncredibility. *Qualls* did not address *Thompson* or its holding. Moreover, one appellate panel of the Tenth Circuit "cannot overrule the judgment of another panel . . . absent en banc reconsideration or a superseding contrary decision by the Supreme Court." *Burlington Northern and Santa Fe Ry. Co. v. Burton*, 270 F.3d 942, 947 (10th Cir. 2001). The Commissioner has presented no evidence of any en banc reconsideration of *Thompson* or a superseding decision by the Supreme Court, nor is the Court aware of any. For this reason, the Court views *Thompson* as the controlling precedent on this issue.

particularly in light of his other impairments.   Further, the ALJ failed to address that Mr. Montanio was homeless during much of the relevant period of time and was often unable to afford the copays for his multiple medications, including pain medication, even though he sought medical care from free and/or low cost community resources.  (Tr. 304-06, 326, 330, 385-86, 414, 466-67, 489, 496, 510-12, 513-16, 517-19.)  *See* SSR 82-59, 1982 WL 31384, at *4 (describing that the failure to follow prescribed treatment is justified when an individual is unable to afford prescribed treatment which he is willing to accept but for which free community resources are unavailable).   Thus, the ALJ's finding that Mr. Montanio's chronic back pain "should be amenable to proper control by adherence to recommended medical management and medication compliance" is conclusory, and the ALJ failed to apply the correct legal standard in finding Mr. Montanio incredible based on his failure to follow prescribed treatment.

### b.   <u>Degenerative Disc Disease</u>

Finally, even if the Court were to agree with the Commissioner that the ALJ considered Mr. Montanio's back pain when she considered his severe impairment of degenerative disc disease as part of her RFC analysis, the ALJ's discussion of Mr. Montanio's degenerative disc disease is equally lacking.   In her RFC analysis, the ALJ only mentioned that Dr. Moedl diagnosed Mr. Montanio with, *inter alia*, "degenerative lumbar disc disease with pain and limited motion." (Tr. 19.)  She then concluded, without more, that Dr. Moedl "did not indicate any specific limitations regarding sitting, standing, walking or lifting and carrying."  There are two problems here.  First, the ALJ's conclusion is misleading because Dr. Moedl's report did not indicate certain restrictions or limitations while excluding others.  In other words, his report was silent as to any functional assessment or limitations, even though the regulations call for such findings in a complete consultative examination.   *See* 20 C.F.R.  404.1519n(c)(6),

416.919n(c)(6).   The absence of evidence is not evidence.   *Thompson*, 987 F.2d at 1491. Further, it is the ALJ's burden at step five to prove that Mr. Montanio can work at a level lower than his past relevant work, and not Mr. Montanio's burden to prove that he cannot.   *Id.*   Thus, to the extent the ALJ believed that an opinion regarding Mr. Montanio's functional limitations was necessary, she should have exercised her discretionary power to recontact Dr. Moedl, provided an explanation of her evidentiary needs, and asked that he furnish the missing information.   *See* 20 C.F.R. §§ 404.1519p(b), 416.919p(b).   Second, as already addressed above, the ALJ failed to consider any of Mr. Montanio's subjective complaints regarding any symptoms related to his degenerative disc disease, *i.e.,* pain, and their impact on his ability to do sustained work-related activities on a regular and continuous basis.

For all of the foregoing reasons, the ALJ failed to apply the correct legal standards in determining Mr. Montanio's RFC and her findings are not supported by substantial evidence, because she failed to consider and properly evaluate the limiting effects of Mr. Montanio's chronic back pain on his ability to do sustained work-related activities on a regular and continuous basis.   *Wilson*, 602 F.3d at 1140; *Thompson*, 987 F.2d at 1491; SSR 96-8p, 1196 WL 374184, *7.

## 2.   COPD/Shortness of Breath

Mr. Montanio also argues that the ALJ's RFC assessment failed to include sufficient limitations related to Mr. Montanio's COPD.   Specifically, he argues (1) that the ALJ erred in finding he could have even occasional exposure to pulmonary irritants given the severity of his COPD; and (2) that the ALJ erred in finding he could sustain regular and continuous work given his shortness of breath.   (Doc. 21 at 18, 22.)   The Commissioner contends that the ALJ's environmental limitation was reasonable because she assigned greater limitations than either of

the State agency nonexamining medical consultants.  (Doc. 25 at 16.)  The Commissioner also asserts that none of the jobs identified by the VE require exposure to pulmonary irritants, thereby making any potential error harmless.  (*Id.* at 17.)  Finally, as to Mr. Montanio's ability to sustain regular and continuous work, the Commissioner asserts that the ALJ considered Mr. Montanio's subjective complaints regarding the severity of his symptoms and found they were not entirely credible.  (*Id.* at 15-16.)

The ALJ's RFC assessment failed to consider Mr. Montanio's shortness of breath.  At step two, the ALJ found Mr. Montanio had a severe impairment of COPD.  (Tr. 16.)  As a symptom of his COPD, the record supports Mr. Montanio frequently experienced shortness of breath.  For example, Mr. Montanio reported to Dr. Moedl that he could only walk about one and half blocks before becoming short of breath.  (Tr. 297.)  He reported to healthcare providers that he had shortness of breath using stairs, walking short distances, and with exertion.  (Tr. 307, 311, 385, 414, 462, 483.)  He further stated that he had difficulty breathing in the mornings and evenings.  (Tr. 542, 554.)  Mr. Montanio testified to losing his breath while dressing, bathing, and shopping.  (Tr. 37.)  Mr. Montanio was hospitalized twice due to shortness of breath, and reported to one emergency room physician that he had difficulty performing his work and required frequent breaks to rest in order to catch his breath.   (Tr. 415-20, 421, 483-507.)  However, there is no discussion in the ALJ's determination addressing the impact of Mr. Montanio's shortness of breath on his ability to do sustained work-related activities on a regular and continuous basis.  20 C.F.R. 404.1529(d)(4) (stating that when a severe medical impairment does not meet or equal a listed impairment, the ALJ will consider the impact of the impairment *and any related symptoms* on a claimant's RFC); SSR 95-5p, 1995 WL 670415, at *1 (instructing that careful consideration must be given to any available information about

symptoms because they sometimes suggest a great severity of impairment than can be shown by objective medical evidence).

Instead, the ALJ's RFC analysis only generally addressed Mr. Montanio's COPD and her findings were conclusory.   First, the ALJ found that, except for occasional flare-ups, Mr. Montanio's COPD had remained *stable*.  (Tr. 19.)  However, the ALJ failed to define what *stable* looks like for Mr. Montanio.  *See Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) (finding that references to claimant being "stable" on medication may have simply meant claimant was not suicidal).   Here, the medical record evidence supports that Mr. Montanio experienced difficulty breathing even while taking his medications.  (Tr. 307-08, 421, 462-63, 548-49, 551-53, 554-56.)   Second, the ALJ found that Mr. Montanio's doctor had not recommended any further medical treatment or additional diagnostic evaluations (*id*.); however, the ALJ points to no evidence to support how additional treatments or diagnostic evaluations would alter the severity of Mr. Montanio's condition or his diagnosis.  Finally, the ALJ noted that Mr. Montanio's treating providers at First Nations had not placed any restriction on his "sitting, standing, walking or lifting and carrying" based on his COPD.  (Tr. 19.)  This finding, however,  is  misleading because it does not appear that Mr. Montanio's treating providers were asked to form an opinion regarding Mr. Montanio's functional limitations.   The absence of evidence is not evidence.  *Thompson*, 987 F.2d at 1491.  Moreover, it is the ALJ's burden at step five to prove that Mr. Montanio can work at a level lower than his past relevant work, and not Mr. Montanio's burden to prove that he cannot.  *Id.*  Thus, to the extent the ALJ believed that an opinion regarding Mr. Montanio's functional limitations was necessary, she could have sought additional information from Mr. Montanio's healthcare providers.  *Maes v. Astrue*, 522 F.3d 1093, 1097-98 (10th Cir. 2008) (finding the ALJ generally must recontact the claimant's medical

26

sources when the ALJ considers an issue that is apparent from the record and the record is inadequate to determine whether the claimant is disabled).   Significantly, none of these findings addressed the impact of Mr. Montanio's shortness of breath on his ability to sustain regular and continuous light work that requires a person to be either standing and/or walking six hours during an eight-hour workday, or sitting most of the day with some pushing or pulling of arm-hand or leg-foot controls.   20 C.F.R. §§ 404.1567(b), 416.967(b); SSR 83-10, 1983 WL 31251, at *5.

The ALJ also did not apply the correct legal standard in assessing Mr. Montanio's credibility.   The ALJ found that Mr. Montanio's "history of non-compliance" diminished his credibility regarding his subjective complaints related to his COPD/shortness of breath. (Tr. 19.)   She specifically pointed to his continued smoking and concluded that Mr. Montanio "ha[d] not found it necessary to [quit]" despite being told to do so.   (*Id.*)   She also pointed to his not taking his inhalers as prescribed.   (*Id.*)   She further found that because UNMH Attending Physician Dr. Scott stated Mr. Montanio would likely experience continued COPD exacerbations if he does not stop smoking that it was "logical to assume that the claimant's symptoms of COPD would diminish if he were compliant with treatment recommendations and medications." (*Id.*)   The ALJ's credibility findings fail for two reasons.

First, the medical record evidence supports that Mr. Montanio frequently expressed that he wanted to quit or cut back on smoking despite his inability to do so for any length of time. (Tr. 192, 256, 261, 271, 297, 304, 307, 314, 317, 326, 330, 352, 355, 361, 554.)   Thus, the ALJ mischaracterized the evidence by finding Mr. Montanio had "not found it necessary" to quit. (Tr. 19.)  Moreover, "even if medical evidence had established a link between smoking and [the claimant's] symptoms, it is extremely tenuous to infer from the failure to give up smoking that

the claimant is incredible when [he] testifies that the condition is serious or painful." *Shramek v. Apfel*, 226 F.3d 809, 813 (7th Cir. 2000). As such, this credibility finding is not supported by substantial evidence.

Second, the ALJ failed to apply the four-factor *Frey* standard to support her noncredibility determination based on Mr. Montanio's failure to follow his prescribed treatment. *Frey*, 816 F.2d at 517. As previously discussed, the ALJ may not rely on a claimant's failure to follow his prescribed treatment unless she considers "(1) whether the treatment at issue would restore claimant's ability to work; (2) whether the treatment was prescribed; (3) whether the treatment was refused; and if so, (4) whether the refusal was without justifiable excuse." *Thompson*, 987 F.2d at 1490 (quoting *Frey*, 816 F.2d at 517). There is no evidence that Mr. Montanio's compliance with his prescribed treatment for COPD would restore his ability to work given his symptoms and the nature of the disease.[18] Further, although Dr. Scott noted that Mr. Montanio would likely experience COPD *exacerbations* if he continued to smoke and not use his inhalers (Tr. 489), he did not opine that Mr. Montanio's COPD *symptoms* themselves would diminish under these circumstances as the ALJ concluded. Finally, as previously stated, the ALJ failed to address that Mr. Montanio was homeless and often times unable to afford the copays for his multiple medications, even though he sought medical care from free and/or low cost community resources. (Tr. 304-06, 326, 330, 385-86, 414, 466-67, 489, 496, 510-12, 513-16, 517-19.) *See* SSR 82-59, 1982 WL 31384, at *4 (describing that the failure to follow prescribed treatment is justified when an individual is unable to afford prescribed treatment which he is willing to accept but for which free community resources are unavailable). Thus, the ALJ failed to apply the correct legal standard in assessing Mr. Montanio's credibility based on his failure to follow his prescribed treatment for COPD.

---

[18] *See* https://www.nhlbi.nih.gov/health/health-topics/topics/copd/treatment.

For all of the foregoing reasons, the ALJ failed to apply the correct legal standards in determining Mr. Montanio's RFC and her findings are not supported by substantial evidence, because she failed to consider and evaluate the limiting effects of Mr. Montanio's shortness of breath on his ability to do sustained work-related activities on a regular and continuous basis. *Thompson*, 987 F.2d at 1491; 20 C.F.R. §§ 404.1529(d)(4), 416.929(d)(4).

### 3.   Function-by-Function Assessment

Mr. Montanio argues that the ALJ erred in her RFC determination because she failed to explicitly find that Mr. Montanio was capable of walking six hours of an eight-hour workday, and instead only stated that light work "requires a good deal of walking or standing, or . . . involves sitting most of the time with some pushing and pulling of arm or leg controls."  (Doc. 21 at 23.)   The Commissioner contends that inherent in the ALJ's RFC assessment that Mr. Montanio could do light work is that Mr. Montanio could stand and walk, off and on, for a total of approximately six hours of an eight-hour day with sitting occurring intermittently during the remaining time, and that a function-by-function assessment was unnecessary.  (Doc. 25 at 15.)   The Court does not agree.

Social Security Ruling 96-8 provides that "[t]he RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities."   *Hendron v. Colvin*, 767 F.3d 951, 956 (10th Cir. 2014) (citing SSR 96-8p, 1996 WL 374184, at *3).   The Ruling directs that "[a]t step 4 of the sequential evaluation process, the RFC must not be expressed initially in terms of the exertional categories of 'sedentary,' 'light,' 'medium,' 'heavy,' and 'very heavy' work because the first  consideration at this step is whether the individual can do past relevant work as he or she actually performed it."   SSR 96-8p, 1996 WL 374184, at *3.   The Ruling further states that a function-by-function

analysis is also important at step 5, when the ALJ determines whether there is other work that the claimant can do. *Id.* In order for an individual to do a full range of work at a given exertional level, the individual must be able to perform substantially all of the exertional and nonexertional functions required in the work at that level. *Id.* "Therefore, it is necessary to assess the individual's capacity to perform each of these functions in order to decide which exertional level is appropriate and whether the individual is capable of doing the full range of work contemplated by the exertional level." *Id.* The concern is that, without a function-by-function analysis at step 5, an ALJ "may . . . overlook limitations or restrictions that would narrow the ranges and types of work an individual may be able to do." *Id.* at *4.

A function-by-function assessment was critical to the outcome of this case. In *Hendron*, the Tenth Circuit held that the ALJ's failure to perform a function-by-function assessment did not demonstrate error because the ALJ had adequately addressed the claimant's problems with sitting. *Hendron*, 767 F.3d at 957. As such, the ALJ's finding in that case that the claimant was limited to sedentary work without explicitly finding that the claimant was capable of sitting for six hours during a regular eight-hour work day was not critical to the outcome of the case. *Id.* That is not the case here. As discussed at length above, the ALJ did not adequately consider Mr. Montanio's chronic back pain or shortness of breath, nor did she properly evaluate the limiting effects of those conditions on Mr. Montanio's ability to do sustained work-related activities on a regular and continuous basis. *See* Sections IV.B.1 and 2, *supra*. Therefore, the ALJ's failure to perform a function-by-function assessment at step five, and separately address Mr. Montanio's ability to sit, stand, walk, push, or pull in light of his chronic back pain and shortness of breath, was critical to the outcome of the case.

For these reasons, the Court finds that the ALJ failed to apply the correct legal standard in determining Mr. Montanio's RFC because she failed to perform a function-by-function assessment as required.  SSR 96-8p, 1996 WL 374184, at *3; *see also Southard v. Barnhart*, 72 F. App'x 781, 784 (10th Cir. 2003) (finding that each of the seven strength demands must be considered separately).

### 4.    The ALJ Applied an Incorrect Legal Standard

Mr. Montanio argues that the ALJ applied an incorrect legal standard because she determined, at least in part, that he could do light work because no treating or examining physician found him to be disabled.    There is no requirement that a treating or examining physician indicate that a claimant is disabled to support a disability finding.   20 C.F.R. §§ 404.1527, 416.927.    Rather, this determination is reserved to the Commissioner.   *Id.* According to the Social Security Administration's own regulations,

> [w]e are responsible for making the determination or decision about whether you meet the statutory definition of disability.  In so doing, we review all of the medical findings and other evidence that support a medical source's statement that you are disabled.  A statement by a medical source that you are "disabled" or "unable to work" does not mean that we will determine that you are disabled.

20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1).  In this matter, the ALJ appears to have found that Mr. Montanio was not disabled, at least in part, because no physician specifically determined that he was.  (Tr. 17.)  In that respect, the ALJ applied an incorrect legal standard in finding that Mr. Montanio was not disabled.

### C.    Substantial Justification

The Commissioner bears the burden of proving that its position was substantially justified.  *Kemp v. Bowen*, 822 F.3d 966, 967 (10th Cir. 1987).    The test for substantial justification is one of reasonableness in law and fact.  *Gilbert v. Shalala*, 45 F.3d 1391, 1394

(10th Cir. 1995).  The government's position must be "justified in substance or in the main – that is, justified to a degree that could satisfy a reasonable person."  *Pierce v. Underwood*, 487 US. 552, 565, 108 S. Ct. 2541, 101 L.Ed.2d 490 (1988).  The government's "position can be justified even though it is not correct."  *Hackett*, 475 F.3d at 1172 (quoting *Pierce*, 487 U.S. at 565.)  A lack of substantial evidence on the merits does not necessarily mean that the government's position was not substantially justified.  *Hadden v. Bowen*, 851 F.2d 1266, 1269 (10th Cir. 1988).

Here, the ALJ failed to apply the correct legal standards in determining Mr. Montaño's RFC and her findings were not supported by substantial evidence, because she failed to consider and evaluate the limiting effects of Mr. Montaño's chronic back pain on his ability to do sustained work-related activities on a regular and continuous basis.  *Wilson*, 602 F.3d at 1140; *Thompson*, 987 F.2d at 1491; SSR 96-8p, 1196 WL 374184, *7.  Additionally, the ALJ failed to apply the correct legal standards in determining Mr. Montaño's RFC and her findings were not supported by substantial evidence, because she failed to consider and evaluate the limiting effects of Mr. Montaño's shortness of breath on his ability to do sustained work-related activities on a regular and continuous basis.  *Thompson*, 987 F.2d at 1491; 20 C.F.R. §§ 404.1529(d)(4), 416.929(d)(4).  The ALJ also failed to apply the correct legal standard in determining Mr. Montaño's RFC because she failed to perform a function-by-function assessment as required.  SSR 96-8p, 1996 WL 374184, at *3.  Finally, the ALJ applied an incorrect legal standard in finding that Mr. Montaño was not disabled by relying, at least in part, on no physician having specifically determined that he was disabled.  20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1).  For all of these reasons, the government's position was not substantially justified.

**D.**      **Remaining Issues**

The Court will not address Mr. Montanio's remaining claims of error because they may be affected by the ALJ's treatment of this case on remand.  *Wilson v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

**V.  Conclusion**

For the reasons stated above, Mr. Montanio's Motion to Reverse or Remand for Rehearing is **GRANTED.**

_____

**KIRTAN KHALSA**
**United States Magistrate Judge,**
**Presiding by Consent**